IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BERNARD GOODWIN : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | |
| JO ANNE B. BARNHART, : | |
| COMMISSIONER OF THE SOCIAL : | NO. 04-5468 |
| SECURITY ADMINISTRATION, : | |
| : | |
| Defendant. : | |

REPORT AND RECOMMENDATION

CHARLES B. SMITH
UNITED STATES MAGISTRATE JUDGE

Currently pending before this Court are cross-motions for summary judgment regarding plaintiff's application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under Titles II and XVI respectively of the Social Security Act, 42 U.S.C. § 401, et seq. For the reasons which follow, the Court recommends that defendant's motion for summary judgment be granted and plaintiff's motion be denied.

I.      PROCEDURAL HISTORY

Plaintiff, Bernard Goodwin, protectively filed applications for SSI and DIB on June 24, 2003, alleging disability beginning January 23, 2003 from a back impairment. (R. 64-66). The state agency denied plaintiff's applications initially. (R.56-62). Upon timely request by plaintiff, a hearing was held before administrative law judge ("ALJ") William Reddy, who issued a decision on September 24, 2004, denying benefits. (R. 63, 34-54, 14-20). Plaintiff filed a timely request for review and on October 29, 2004, the Appeals Council denied review, thereby making the ALJ's decision the final decision of the Commissioner. (R. 8, 5-7).

Plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's decision.

Challenging the ALJ's finding of "not disabled," plaintiff now asserts that the ALJ's decision is not supported by substantial evidence. Specifically, plaintiff refers to the ALJ's credibility finding, his consideration of the testimony of a Vocational Expert ("VE") and the reports of his treating orthopedist.

II.     MEDICAL HISTORY

    A.     Medical Records

Plaintiff was born on March 29, 1954 and was 50 years old at the time of the ALJ's decision. (R56, 18). He alleges that he sustained a back injury when he fell off of a chair on January 23, 2003, while changing a light bulb at work. (R. 168).

Prior Records:

The record includes some medical reports from October 2000 to May 2001. (R. 213-229). At that time, plaintiff reported that he began experiencing back pain after he felt a pop in his back while bending over to pick up a paper clip. (R. 221). The records indicate that he had a herniated disc at L4-5 impinging on the traversing L5 nerve root and a small central herniated disk at L5-S1. (R. 222). Plaintiff was treated with conservative treatment, including therapy and medicine and after making "good progress" returned to his normal job. (R. 213-218).

Records Post 1/23/03 (alleged onset date):

On January 26, 2003, three days after his injury, plaintiff reported to the emergency room at Abington Memorial Hospital. (R. 154-167, 206-208). He reported that while he was at work on Friday he had fallen out of a chair hitting a hard surface and complained of back pain. He also reported that he had experienced some back pain two years earlier. (R. 156). Studies of his lumbar spine revealed no fracture, but there was some degenerative narrowing at the L4-5 interspace. (R. 62). Upon examination he had full range of motion and muscle strength in his extremities and no radicular pain with negative straight leg raise. (R. 166). His diagnosis was lumbar sprain and he was discharged with medication and

instructions that he should be able to return to work in two days. (R. 156, 165-166).

An MRI of plaintiff's lumbar spine performed on February 20, 2003 revealed a large right-sided herniation at L4-5 along with a small, irregular herniation centrally and to the right at L5-S1. A lesion with nonspecific signal characteristics was also noted incidentally in the posterior aspect of S1. (R. 136-137, 140-141, 202-205).

Eric A. Williams, M.D., of Einstein Regional Orthopedic Specialists, examined plaintiff on March 5, 2003. (R. 120-121, 138-139). Dr. Williams noted that plaintiff had been referred because of acute onset of right leg pain beginning on January 23, and that the pain radiated down the lateral aspect of his thigh and calf into both the plantar and dorsal aspect of his foot. Plaintiff had received a Medrol Dosepak, but stated that he did not have significant improvement. He reported parasthesias but denied night pain. Dr. Williams indicated that plaintiff's past medical history was unremarkable. Upon examination, Dr. Williams noted that plaintiff had a narrow based gait which is antalgic on the right. He did not use assistive devices or orthoses. (R. 120, 138). He had decreased sensation over the L4-L5 and S1 on the right. Dr. Williams reviewed the MRI results and indicated that plaintiff had a large right paracentral L4-5 disc herniation causing compression of the L5 nerve root and a very small herniation at L5-S1 which he did not believe was causing any of plaintiff's symptoms. Dr. Williams indicated that he believed plaintiff had a symptomatic paracentral disc herniation and noted that due to the degree of compression, he most likely needed surgery. He sent plaintiff to pain management for epidoral steroid injections and noted that if symptoms did not improve they would entertain surgery. (R. 121, 139).

On March 11, 2003, plaintiff was evaluated by Sanjay Gupta, M.D., Director of the Pain Center. (R. 200-201). Dr. Gupta recommended that plaintiff have an EMG to better evaluate the origin of his pain, that they perform epidural steroid injections and lumbar facet nerve blocks, and that he begin a physical therapy program. (R. 200).

M. Richard Katz, M.D., P.C. examined plaintiff for a neurosurgical opinion on March 18, 2003. (R. 198-199). He noted that since the onset of symptoms plaintiff had shown some mild improvement. Plaintiff was to have epidural injections but they could not be done for a number of weeks at Einstein. Dr. Katz noted that in the meantime plaintiff had shown some improvement and the severe pain that he had before had lessened. He had not complained of weakness, but described numbness in the great right toe. He had pain with flexion and extension extending to the right buttock particularly with no special radiation with range of motion. Dr. Katz noted that rotation and lateral bending increase his symptoms in the sacroiliac region, that he was able to ambulate with no apparent weakness, and that he walked on heels and toes with no weakness, but he described pain in his back as he did it. (R. 198-199). He noted that it was clear plaintiff had a disc herniation and symptomatology associated with it. Plaintiff had been improving and told Dr. Katz he was considering not even getting the injections and wondered whether the surgery was necessary. Dr. Katz indicated that surgery was the best approach because of the obvious radiculopathy even though it had subsided. He noted that it was likely that it would increase with activity, although it could not be predicted. He also indicated that a course of injections over three to four weeks could relieve his symptoms so he could return to activity and if not, surgery would be recommended. The alternative would be conservative treatment with Tylenol. (R. 199). Dr. Katz noted that a micro lumbar disectomy would be the optimal treatment, as it would remove the compression on the nerve root and would most likely lead to plaintiff's earliest recovery and return to activity. (R. 199).

On April 4, 2003, Dr. Williams noted that plaintiff had his first epidural steroid injection but it was too early to see whether he had significant pain relief. He was to return in four weeks after a second injection. (R. 119). According to a pain assessment form completed on April 8, 2003, plaintiff's pain was better since his last visit. (R. 122, 196).

A letter from Dr. Williams dated May 5, 2003 indicates that plaintiff had a second steroid

injection without significant pain relief. Dr. Katz noted that it had been his belief at the time of his initial evaluation that most likely the only thing that would reasonably improve plaintiff's symptoms was surgery and plaintiff had now come to that conclusion as well. He noted that plaintiff's leg pain was much more significant than his back pain and that disc surgery would not relieve his back pain, but would have a six week recovery as opposed to a three month recovery for a back fusion.

Plaintiff indicated on a pain assessment form that his pain was worse on May 13, 2003. (R. 118, 195). Dr. Katz scheduled surgery for May 19, 2003. (R. 117). The record includes the pre-surgery documents and consents, but no operative report. (R. 179-194).

On May 28, 2003, Dr. Williams examined plaintiff. He noted that plaintiff was nine days post right L4-5 discectomy and was doing quite well in terms of resolution of his leg pain and had no evidence of infection. (R. 116). Dr. Katz cleared him to be driven in a car and indicated that he should increase his walking as he could tolerate. He noted that he would likely clear plaintiff to drive at the next visit in two weeks. (R.116). Plaintiff's pain assessment dated June 10, 2003 indicated that his pain was better and he worked through the pain. (R. 115, 177).

Dr. Williams next examined plaintiff on June 12, 2003, three weeks post surgery. He indicated that plaintiff had complete resolution of his right leg pain but still had some residual back pain secondary to his incision. (R. 113, 173). He instructed plaintiff to continue walking as he could tolerate and to return in four weeks. He noted that at that time if plaintiff was doing well he would clear him to return to work. However, if he still had back pain he would send him for physical therapy. (R. 113, 173).

On a pain assessment form dated July 8, 2003 plaintiff indicated that his pain in his low back was rated as a three, which is classified as annoying pain. (R. 112, 176). A note from that date indicates that he complained of right leg pain after excessive walking or standing. (R. 175). At his next visit on July 14, 2003 plaintiff indicated that his leg pain had completely resolved but he still had back and right

5

buttocks pain. (R. 111, 131, 178). Dr. Williams sent plaintiff to physical therapy and gave him a Medrol Dosepak. He noted that he had informed plaintiff prior to surgery that the surgery was intended for the leg pain and the only thing that would address the back and buttocks pain would be a fusion. Plaintiff had opted for the discectomy, which Dr. Williams thought was a reasonable choice. Dr. Williams indicated that if over the next six to eight weeks the back and buttocks pain did not improve, plaintiff would need an anterior lumbar interbody fusion followed by a posterior spinal fusion. (R. 111, 131, 178).

On August 26, 2003, plaintiff indicated that his pain was better since his last visit and rated his low back pain as a three. (R. 114). On September 3, 2003, fourteen months post surgery, Dr. Williams indicated that plaintiff still had complaints of back pain, but it was improving. Plaintiff stated that the pain was most severe when he awakens in the morning and improves with activities. (R. 110). Dr. Williams stated that plaintiff worked in maintenance and believed he could not work, which Dr. Williams was in agreement with. He noted that he had sent plaintiff for physical therapy and would then start him on a work hardening program. (R. 110). He indicated that plaintiff's back may not allow him to return to maintenance activities, but he would assess him again in four months. If plaintiff was still having significant back pain he would address the need for fusion, but noted that he did not believe plaintiff would need it unless he was having increased pain with activity as opposed to improvement with activity. (R. 110).

Kevin A. Mansmann, M.D. completed an independent medical evaluation on September 24, 2003. (R. 168-172). He noted plaintiff's history, including that he had a prior injury in 2000 when he was lifting a bucket and threw out his back at work. Plaintiff did not have any injections or surgeries as a result of that injury. He had been out of work for six to seven months and returned at regular duty. (R. 169). Dr. Mansmann noted that plaintiff appeared comfortable while he took his history and arose with

6

hesitation and support. He was not wearing a brace, but was walking with a cane. Upon examination, Dr. Mansmann indicated that plaintiff walked normally on toes and heels and had no evidence of spasm. There was reported tenderness over the paraspinal muscles and spine at L4-5 and S1. He had some decreased range of motion in flexion and lateral extension on the right. (R. 171).

Gerald Gryczko, M.D., a state agency physician, completed a Residual Functional Capacity Assessment on November 7, 2003. (R. 145-152). He opined that plaintiff could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour day, sit for a total of 6 hours in an 8 hour day, and his ability to push or pull was limited in the lower extremities. (R. 146). He indicated that plaintiff could occasionally climb, balance, stoop, kneel, crouch, and crawl and had no manipulative, visual, communicative, or environmental limitations. (R. 147-150).

      B.      Administrative Hearing Testimony

A hearing was originally scheduled for March 9, 2004, at which time plaintiff appeared with his attorney and the ALJ agreed to postpone the hearing to allow plaintiff's attorney time to develop the case. (R. 34-36). On August 10, 2004, a hearing was held before Administrative Law Judge ("ALJ") William Reddy, at which time plaintiff and a VE testified. (R. 38-55).

At the beginning of the hearing, the ALJ noted that plaintiff was using a cane. Plaintiff testified that the cane had been prescribed by Dr. Williams and he had been using it since May 19, 2003, when he had his back surgery. (R. 41). He testified that he used it every day and that in his house he either used the cane or he sometimes used the furniture to help him get around. (R. 42). Plaintiff lived with a female friend who worked full time. (R. 42). He testified that he had a drivers' licence and drives about three days a week to go to the doctor's office or other appointments. (R. 42). He stated that as a result of his injury in January 2003, he has a Workers' Compensation claim still pending. (R. 42-43).

Plaintiff testified that his back was about the same as it was after the injury. (R. 43). He has pain

down his right leg and numbness. He indicated that he had very little improvement after surgery and was currently doing physical therapy three days a week. (R. 43). He had been doing physical therapy for about a year but indicated that the doctor had stopped his therapy for about two months. (R. 43). In addition to physical therapy, he takes medication including, Flexeril, Promethazine, Neurontin, a Doragesic patch and Taralabbl. (R. 43-44). According to plaintiff the medication helps a little and he has some side effects including drowsiness and feeling high. (R. 44). He testified that the pain down his leg has been constant since the accident. (R. 45). Plaintiff reported that he is able to lift about thirty pounds and can walk about a block, but then gets tired and his leg gets numb. (R. 45). He can stand about twenty minutes and then gets pain in his back and his leg gets numb. Plaintiff then either sits or lays down for about a half hour and then changes positions. (R. 45). He can bend at the waist and go up and down steps "a little". (R. 46).

As to plaintiff's daily activities, he reported that he goes to therapy, lays down, sleeps and sits for a while. He does not do chores or laundry and does very little shopping and cooking. (R. 46-47, 48). Plaintiff watches television about 15 hours a day. (R. 46-47). He also either drives or his son takes him to visit his mother about three days a week. (R. 47). Plaintiff testified that he does some home exercises including leg lifts that his therapist prescribed. (R. 47-48).

Upon questioning by plaintiff's attorney, he indicated that he was presently under treatment and was being cared for by Dr Williams and Dr. Tabby, the orthopedist who operated on him. (R.48-49). He reported that he goes to therapy three days a week and he did not know how long it would continue. When asked about any plans for future surgery, he reported that it was up in the air. (R. 49).

A VE testified that plaintiff's past relevant work as a working supervisor for maintenance/cleaning was skilled medium work, which he performed as heavy and his work loading and unloading trucks at UPS was unskilled heavy work. (R. 50-51). According to the VE the skills would

8

not be transferrable to other work. (R. 51). Plaintiff's other work in maintenance was not supervisory and would be unskilled heavy work, performed at the medium level. (R. 52). The ALJ asked the VE to assume a hypothetical individual who was plaintiff's age with his education and past work experience, who is limited to light exertional work, no pushing and pulling with the right lower extremity, who can never climb ladders, ropes or scaffolds, could only occasionally climb stairs, balance, bend, kneel, crouch, and crawl. (R. 52). The VE testified that such an individual could perform most of the light unskilled jobs that exist in the national economy and the limitations would not significantly reduce the light unskilled occupational base. (R. 52-53). The ALJ then posed a second hypothetical assuming that all of plaintiff's testimony was credible. (R. 53). The VE stated that if all of plaintiff's testimony was credited he would not be able to work because as he outlined his daily activities and his symptoms, he indicated that he has to lay down and take naps and an employer would not be able to provide that opportunity. (R. 53). Finally, the VE reported that there were no conflicts between his testimony and the Dictionary of Occupational Titles ("DOT"). (R. 54).

    C.    ALJ's Decision

On September 24, 2004, ALJ Reddy issued a decision denying benefits. He found at step one of the sequential evaluation that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability. (R. 15). At steps two and three, the ALJ found that plaintiff has a back disorder, which is a "severe" impairment that does not meet or equal a listing. (R. 15-17). ALJ Reddy found that plaintiff's allegations regarding his limitations were exaggerated and not fully credible. (R.16-17). After considering all of the evidence he found that plaintiff retained the residual functional capacity ("RFC") to perform light work with no climbing ladders, scaffolds, and ropes, with no more than occasional climbing stairs, balancing, bending, kneeling, crouching, or crawling and no pushing/pulling with the right lower extremity. The ALJ concluded based upon the VE's testimony that plaintiff was

unable to return to his prior work. (R. 18). However, at step five of the analysis, relying upon the testimony of the VE and the framework of Medical Vocational Rule 202.14, the ALJ found that plaintiff is not disabled within the meaning of the Act. (R. 19).

III.     STANDARD OF REVIEW

On judicial review of a final decision from the Commissioner of Social Security, a court must determine whether the Commissioner's ruling is supported by substantial evidence. 42 U.S.C. § 405(g); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied, 507 U.S. 924, 113 S. Ct. 1294 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir.), reh'g denied (3d Cir. Sept. 9, 1988). "Substantial evidence" does not mean "a mere scintilla," but rather indicates such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Although a reviewing court has a duty to review the evidence in its totality, Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting Daring v. Heckler, 727 F.2d 64, 70 (3d Cir. 1984)), the court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

IV.     DISCUSSION

In a two page brief in support of summary judgment, plaintiff argues that the ALJ's decision was not supported by substantial evidence because plaintiff's testimony indicates limitations which meet the requirements of the Act and because the ALJ ignored the testimony of the VE. He also references notes from plaintiff's orthopedist, Dr. Williams. We take each of these arguments in turn.

     A.     Failure to Properly Assess Treating Physician's Opinion

Plaintiff references the notes of plaintiff's treating orthopedist, Dr. Williams. Under applicable regulations and controlling case law, "opinions of a claimant's treating physician are entitled to substantial and at times even controlling weight." Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir.

10

2001) (citing 20 C.F.R. § 404.1527(d)(2)).  Such deference is accorded to treating physicians, especially "when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time." Rocco v. Heckler, 826 F.2d 1348, 1350 (3d Cir. 1987) (quoting Podedworny v. Harris, 745 F.2d 210, 217 (3d Cir. 1984)); 20 C.F.R. § 404.1527(d). Moreover, where the treating physician is a specialist his opinion is entitled to even greater deference. See Mason v. Shalala, 994 F.2d 1058, 1067 (3d Cir. 1993); 20 C.F.R. § 404.1527(d)(5).  A treating source's opinion on the issue of the nature and severity of a claimant's impairment will be given controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d).

An ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided. Plummer v. Apfel, 186 F.3d at 429.  In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports" and may not reject a treating physician's opinion due to his or her own credibility judgments, speculation or lay opinion. Morales v. Apfel, 225 F.3d 310, 317-318 (3d Cir. 2000) (quoting Plummer, 186 F.3d at 429).  Where an ALJ elects to disregard a treating physician's opinion, he must explicate on the record his reasons for doing so. Brewster v. Heckler, 786 F.2d 581, 584 (3d Cir. 1986).  It cannot be "for no reason or for the wrong reason." Morales, 225 F.3d at 317 (quotations omitted).

In this case, the ALJ did not disregard the opinions of Dr. Williams.  The treatment note referenced by plaintiff without further explanation, indicates that plaintiff no longer had leg pain, but continued to have pain in his back, which was improving. (R. 110).  The pain was worse in the

11

morning and improved with activity. Dr. Williams indicated that plaintiff may not be able to do maintenance activities and in four months he would assess whether he needed surgery. However, he indicated that it was unlikely unless his pain increased with activity as opposed to improving with activity. (R. 110). There is nothing in this report or in any of Dr. William's other reports that contradicts the ALJ's opinion. Dr. Williams did not opine that plaintiff would be unable to return to any work and did not impose any restriction which were not considered by the ALJ. Rather, he stated that plaintiff may not be able to return to maintenance activities. After considering and specifically relying upon Dr. Williams' records, as well as the remainder of the record, including Dr. Mansmann's report, the ALJ agreed with the RFC assessment of the state agency physician and limited plaintiff to light work, with no climbing ladders, scaffolds and ropes, with no more than occasional climbing stairs, balancing, bending, kneeling, crouching and crawling and no pulling/pushing with his right lower extremity. (R. 17). We therefore do not find any error in the ALJ's consideration of Dr. Williams' records.

B. Failure to Properly Assess Credibility

Plaintiff also argues that the ALJ improperly assessed his credibility. An ALJ is required to "give serious consideration to a claimant's subjective complaints of pain [or other symptoms], even where those complaints are not supported by objective evidence." Mason v. Shalala, 994 F.2d at 1067 (citing Ferguson v. Schweiker, 765 F.2d 31, 37 (3d Cir. 1985)). Objective evidence of the symptoms themselves need not exist, although there must be objective evidence of some condition that could reasonably produce them. Green v. Schweiker, 749 F.2d 1066, 1070-71 (3d Cir. 1984). In situations where medical evidence supports a claimant's complaints, the "complaints should then be given 'great weight' and may not be disregarded unless there exists contrary medical evidence." Mason, 994 F.2d at 1067-68. The ALJ, however, "has the right, as the fact finder, to reject partially, or even entirely,

such subjective complaints if they are not fully credible." Weber v. Massanari, 156 F. Supp.2d 475, 485 (E.D. Pa. 2001) (citing Baerga v. Richarson, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931, 95 S. Ct. 1133 (1975)).

Under 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. 416.929(c)(3), the kinds of evidence that the ALJ must consider in addition to the objective medical evidence when assessing the credibility of an individual's statements include the individual's daily activity; location, duration, frequency and intensity of the individual's symptoms; factors precipitating and aggravating the symptoms; the type, dosage, effectiveness and side effects of medication taken to alleviate the symptoms; treatment, other than medication, received for relief of the symptoms; any non-treatment measures the individual uses to relieve pain or symptoms; and other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Id. Moreover, the ALJ should consider the claimant's statements, appearance and demeanor; medical signs and laboratory findings; and physicians' opinions regarding the credibility and severity of plaintiff's subjective complaints. Weber, 156 F. Supp.2d at 485 (citing SSR 96-7p, 1996 WL 374186 (S.S.A. 1996)). Ultimately, the ALJ's "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Schwartz v. Halter, 134 F. Supp.2d 640, 654 (E.D. Pa. 2001) (quoting SSR 96-7p; Schaudeck v. Commissioner of Social Security Administration, 181 F.3d 429, 433 (3d Cir. 1999)).

As to the plaintiff's credibility in this case, the ALJ noted that after reviewing the evidentiary record he found that plaintiff's allegations were "exaggerated, not supported by the medical evidence, and thereby, not credible." (R. 17). The ALJ gave a detailed explanation of the inconsistencies in the record and the reasons why he found plaintiff's testimony to be not fully credible. He appropriately

considered the factors set forth in 20 C.F.R. § 404.1529(c)(3) and 20 C.F.R. 416.929(c)(3). ALJ Reddy made it clear what portions of plaintiff's testimony he was discrediting and gave specific reasons for doing so. He noted that contrary to plaintiff's testimony that he has had constant leg pain since his injury, which did not improve with surgery, Dr. Williams' records indicate that plaintiff reported that his leg pain had completely resolved. He further indicated that plaintiff's reported need to lie down and sleep during the day was not supported by any medical evidence. (R. 17).

After reviewing the record in its entirety and the ALJ's decision, it is evident that the ALJ credited plaintiff's testimony to the extent supported by the medical records, and limited plaintiff's RFC accordingly. After properly assessing the factors as set forth in 20 C.F.R. § 416.929 and SSR 96-7p, he found that plaintiff's testimony regarding constant leg pain without improvement and a need to lie down and sleep during the day was not supported. The ALJ's reasoning is fully supported by the record. As the ALJ noted, plaintiff's testimony is in complete conflict with Dr. William's notes. As early as May 28, 2003, only nine days post surgery, Dr. Williams noted that plaintiff was doing quite well in terms of resolution of his leg pain. (R. 116). On June 12, 2003, three weeks post surgery, Dr. Williams indicated that plaintiff had complete resolution of his right leg pain, but still had some residual back pain secondary to his incision (R. 113, 173) and on July 14, 2003, six weeks post surgery, Dr. Williams once again reported that plaintiff stated that his leg pain had completely resolved. (R. 111, 131, 178). Furthermore, there are no notations regarding a need to lie down or sleep during the day. This allegation is inconsistent with plaintiff's reports to Dr. Williams that his pain was actually improved with activity. (R. 110). There is also no mention in the medical records of this being a side effect of any medication. We therefore will also not disturb the ALJ's finding as to plaintiff's credibility.

  C. <u>Testimony of Vocational Expert</u>

Finally, plaintiff contends that the ALJ disregarded the testimony of the impartial VE that there would be no jobs plaintiff could perform. "'Residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Hartranft v. Apfel, 181 F.3d 358, 359 n. 1 (3d Cir. 1999) (citing 20 C.F.R. § 404.1545(a)). In making a residual functional capacity determination, the ALJ must consider all evidence – both medical and non-medical -- before him. Burnett v. Commissioner of Social Security Admin., 220 F.3d 112, 121 (3d Cir. 2000). "Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." Id.

Once an ALJ makes an RFC assessment, he may inquire of a vocational expert what work an individual with such limitations can do. "While the ALJ may proffer a variety of assumptions to the expert, the vocational expert's testimony concerning a claimant's ability to perform alternative employment may only be considered for purposes of determining disability if the question accurately portrays the claimant's individual physical and mental impairments." Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984). A hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments that are supported by the record." Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987). Where the record contains medically undisputed evidence of an impairment not included in the hypothetical, the expert's response is not considered substantial evidence. Podedworny, 745 F.2d at 218 (citing Wallace v. Secretary of Health & Human Servs., 722 F.2d 1150, 1155 (3d Cir. 1983)).

In this case, the VE testified in response to a second hypothetical question, that if all of plaintiff's testimony was credited, he would be unable to work. She explained that as plaintiff outlined his daily activities and his symptoms, he indicated that he has to lay down and take naps and an employer would not be able to provide that opportunity. (R. 53). However, the ALJ specifically

rejected plaintiff's testimony regarding his need to lay down and take naps during the day. Accordingly, ALJ Reddy appropriately relied upon the VE's response to his first hypothetical, as to an individual capable of performing light work with no climbing ladders, scaffolds and ropes, with no more than occasional climbing stairs, balancing, bending, kneeling, crouching or crawling and no pushing/pulling with the right lower extremity. (R. 19-20). At step five of the analysis, the ALJ noted that the VE had testified that these limitations did not significantly reduce the unskilled, light occupational base. (R. 19).

Given the ALJ's finding that plaintiff's testimony was exaggerated and not fully credible, specifically as to his need to lay down during the day, there was no requirement that the ALJ rely upon the VE's response to the first hypothetical, including that limitation. See Chrupcala, 829 F.2d at 1276. As discussed above, we find the ALJ's credibility analysis to be supported by the record. We therefore find no error in the ALJ's reliance upon the VE's response to the first hypothetical at step five of the analysis. As the first hypothetical posed by the ALJ included the limitations supported by the record, the VE's response to the question serves as substantial evidence. Id.

Therefore, I make the following:

RECOMMENDATION

AND NOW, this          day of May, 2005, IT IS RESPECTFULLY RECOMMENDED that Defendant's Motion for Summary Judgment be GRANTED and Plaintiff's Motion for Summary

Judgment be DENIED.

                                                     CHARLES B. SMITH
                                            UNITED STATES MAGISTRATE JUDGE